Newman, J.
It is suggested that if this court find that the relator is entitled to relief the extent to which it could go in its order would be to require the respondent to make an investigation of the cjiarges of fraud, illegality and irregularity. Such *116 an investigation would be futile if the secretary of state did not have the authority to recount or order a recount of the ballots in the event the charges were found by him to be correct. There would be no adequate or effective remedy for the redress of the wrongs of which the relator complains. Assuming, then, that the charges relied upon by the relator are true and assuming that the relator here is entitled to make the relation, we shall determine only what is concededly the real and important question in the case, viz., Will mandamus lie to compel the respondent to recount or direct a recount of the ballots voted at the election ?
The duties of the deputy state supervisors of elections of the different counties of the state relating to the returns of elections and the abstract of votes to be made by them are prescribed by Section 5093 et seq., General Code. After the count of the ballots by the judges of election there is transmitted to the deputy state supervisors a certified copy of the returns, and within the time fixed by law they open and canvass the returns, make an abstract of the votes and transmit copies thereof to certain officers named in the statute. There is no claim made here that there is any error in the canvass of the returns or in the abstract made and transmitted by the deputy state supervisors, but it is fraud, illegality and irregularity on the part of the judges and clerks and others at the election and in the counting of the ballots of which the relator complains. He avers in his petition that Section 5090-1, General Code (103 O. L., 265), provides for the preservation of the ballots for the purpose *117 of having errors in counting corrected. That sec-' tion is as follows:
“Sec. 5090-1. Before separating, the judges and clerks shall fold in two folds and string closely upon a single piece of flexible wire, all ballots which shall have been counted by them, unite the ends of such wire in a firm knot, seal the knot in such manner that it cannot be untied without breaking the seal, enclose the ballots so strung in a secure cloth or heavy paper covering and securely tie and seal such covering with official wax impression seals, to be provided by the deputy state supervisors of elections, in such manner that it cannot be opened without breaking the seals, and deliver said ballots in such sealed covering to the deputy state supervisors of elections, and such officers shall carefully preserve such ballots for thirty days, and at the expiration of that time shall destroy them by burning without previously opening the package. Such ballots shall be destroyed in the presence of the official custodians thereof and two electors of approved integrity and good reputation and members respectively of the two leading political parties. The said electors shall be designated by the board of deputy state supervisors of elections of the county in which such ballots are kept; provided that if any contest of election shall be pending, at the expiration of said time the said ballots shall not be destroyed until such contest is finally determined. In all cases of contested elections, the parties contesting the same shall have the right to have said ballots opened and to have all errors in counting corrected by the court or body trying such contest, but such *118 ballots shall be opened only in open court or in open session of such body and in the presence of the officers having the custody thereof.”
The legislature has defined clearly the purpose for which the ballots are preserved. They can be recounted in cases of contested elections only. It is to be observed that the ballots are to be opened and errors in counting corrected by the court or body trying' the contest, and they are to be opened only in open court or in open session of such body. No reference is made in this section to the secretary of state. The deputy state supervisors are made the custodians of the ballots, but with no authority whatever to open or recount them.
So there can be no doubt as to when or by whom or where a recount of the ballots can be had. There must be a contest before there is the right in any one to demand a recount. The recount must be made by the court or by the body trying the contest and in open court or before the body in open session.
It is not claimed that there is a contest of election here. In fact, it is conceded that there is no statutory proceeding for contesting an election under a state referendum in the submission of amendments to the constitution. Therefore none of the provisions of Section 5090-1 relating to a recount can apply here. Even if there were a contest pending no authority is conferred or duty imposed by this statute upon the secretary of state to recount or direct a recount of the ballots. This is the only statute bearing upon the subject, and, as we view it, it precludes a recount of ballots by any one other *119 than those designated therein, and then only in the manner therein prescribed.
But counsel for the relator say that even if there is no specific authority granted the secretary of state to recount or direct a recount of the ballots, yet he has the implied power to do so. In Section lb of Article II of the Constitution it is provided that any proposed law or amendment to the Constitution submitted to the electors, if approved by a majority of the electors.voting thereon, shall take effect thirty days after the election at which it was approved and shall be published by the secretary of state. Section 4787, General Code, makes the secretary of state the state supervisor and inspector of elections, and as such he is to perform the duties of such office as prescribed in the title of which the section is a part.
It is claimed by counsel that a reasonable construction of the duties imposed upon this officer, as found in Section 4787, General Code, and in Section lb of Article II of the Constitution, makes clear his duty to make the recount in order that he may publish a truthful result of the election.
It is true that in addition to powers expressly conferred by statute • upon an officer he has impliedly such other powers as are necessary for the due and efficient exercise of those powers expressly granted. The duties of the secretary of state in canvassing the returns and in declaring the result of the election are specifically fixed by statute and are purely ministerial. He is not authorized to try an election contest or to pass upon the validity of election returns made to him. Were such authority *120 given this official then the question of implied power to perform these duties efficiently might arise.
But, as we have seen, the legislature has provided for -the preservation of the ballots by Section 5090-1 and has expressly prescribed by whom and under what conditions they shall be counted. If it had intended that the secretary of state could recount or order a recount he would have been designated in the statute. To hold that the secretary of state has implied power to do an act the performance of which is in positive and certain terms confined to a court or a body trying an election contest, would be usurping the powers and functions of the legislature. In our opinion there is no implied power in the secretary of state to do what relator would have him do.
Mandamus is defined by statute. Section 12283, General Code, reads: “Mandamus is a writ issued, in the name of the state, to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station.”
In Selby, Auditor, v. The State, ex rel., 63 Ohio St., 541, the court say: “The writ may issue to command ‘the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station/ It may not issue to compel the performance of an act not so enjoined.”
Can it .be said that the recounting or ordering a recount of the ballots voted at the election is an act specially.enjoined upon the secretary of state as a *121 duty resulting from his office ? Not only is the performance of this act not enjoined upon him, but under the plain provisions of the statute relating to the preservation of the ballots no one except the court or body trying the election contest has authority to open or count the ballots.
Counsel for the relator ádmit that under the ruling of the court in Link v. Karb, Mayor, 89 Ohio St., 326, injunction is not the proper remedy for reaching the alleged irregularities and illegalities in the count. They say this not being an' action where quo warranto will lie, and there being no specific method for contesting the election under the state referendum, the only remedy left is mandamus, and if they are unsuccessful in this there is no remedy for the present wrong which they claim is about to be inflicted on the state.
The power to provide a remedy for the redress of the wrongs of which the relator complains rests in the general assembly, and courts have no authority to usurp the powers of that body. The legislature has seen fit to provide for the preservation of the ballots voted at an election. It has prescribed the conditions under which these ballots can be counted, viz., in case there is a contest of election. It has failed to provide a method for contesting an election under a referendum. Section 21 of Article II of the Constitution provides that the general assembly shall determine by law before what authority and in what manner the trial of contested elections shall be conducted. It is not within the power of the court to do so. The failure of the *122 legislature to provide for a contest confers no jurisdiction upon the courts. Link v. Karb, Mayor, supra.

Demurrer sustained and writ refused.

Nichols, C. J., Shauck, Johnson, Donahue and Wanamaker, JJ., concur. Wilkin, J., not participating.